from which a jury would be warranted in finding defendant negligent in the subsequent management of the lighter.

[1] The plaintiff immediately made an outcry, and the mate called to the captain, informing him that plaintiff had been drawn overboard, and asked that the boat be stopped. The request was not complied with. There is evidence that the lighter was backing into the stream very slowly; the mate testified that she was going at the rate of one mile per hour. It was the duty of defendant's captain, when informed that plaintiff was overboard, to use reasonable care, not only to prevent further injury, but to rescue the unfortunate man, if it could be done by the exercise of the care and prudence of a reasonably careful pilot placed in his position at the time. There is evidence from which the jury might have found that the captain was unmindful of his duty to the plaintiff and that the accident was occasioned in consequence of his negligence. He knew that plaintiff had been drawn overboard, the mate had asked him to stop the boat, and it is claimed that this might have been done in time to avoid the accident. He backed the boat 45 or 50 feet after the notice and before plaintiff's foot was amputated. In reference to the contention that the captain was engaged in making a difficult maneuver at the time, I cannot find that an unusual or extraordinary situation was created by backing at the rate of one mile per hour into a three-mile tide, and I think the jury might properly have found, as they did, that the captain failed to exercise the reasonable degree of care which would have avoided this accident. It was for them to say.

[2] The learned justice who presided at the trial, however, has set the verdict aside on the ground that it is against the weight of the evidence. He observed the witnesses, and may be right. As the truth will be developed upon a retrial, I advise that the order be affirmed, without costs. All concur.

---

## FAGAN v. ATLANTIC COAST LINE R. CO.

(Supreme Court, Appellate Division, Second Department.   November 1, 1915.)

1. CARRIERS ⬅➡318—PERSONAL INJURY—SETTING DOWN PASSENGER—SUFFICIENCY OF EVIDENCE.

In an action against defendant railroad for the death of plaintiff's intestate, a passenger, through the negligence of defendant, brought under Code Va. 1904, §§ 2902, 2903, authorizing actions therefor, evidence *held* sufficient to show negligence in setting down near the track the intestate, who was intoxicated, but insufficient to connect such negligence with his death.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. ⬅➡318.]

2. CARRIERS ⬅➡303—CARE—SETTING DOWN PASSENGER.

A common carrier must exercise, a high degree of care as to its passengers, and, while bound to see that a passenger is set down in a reasonably safe place, is not liable as an insurer.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1218, 1224, 1226–1232, 1234–1240, 1243;   Dec. Dig. ⬅➡303.]

Appeal from Trial Term, Kings County.

Action by Margaret Fagan, as administratrix, etc., of Nicholas J. Fagan, deceased, against the Atlantic Coast Line Railroad Company. From a judgment in favor of the plaintiff, as amended, and from an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, and RICH, JJ.

Henry M. Dater, of Brooklyn (Harry K. Davenport, of New York City, on the brief), for appellant.

John C. Robinson, of New York City, for respondent.

RICH, J. The defendant appeals from a judgment in favor of the plaintiff, in an action to recover for the death of her intestate, alleged to have been caused by the negligence of defendant's servants in charge of one of its trains upon which he was a passenger, and from an order denying its motion for a new trial made upon the minutes. The accident happened in the state of Virginia, and the action is brought under the provisions of sections 2902 and 2903 of the Code of that state, which authorizes the maintenance of actions of this character.

The deceased was a blacksmith, 42 years of age, residing at Carson, a small hamlet upon defendant's road a few miles from Petersburg, at which place the defendant maintained a station, where its local trains regularly stopped, but its through trains did not. On October 20, 1911, plaintiff's intestate left Carson on defendant's 12:30 p. m. train for Petersburg, being at that time sober. At about 8:40 o'clock p. m. of that day defendant's through train No. 85, composed (exclusive of its engine and tender) of ten cars, a mail car, baggage car, two day coaches, and five Pullman sleeping cars, left Petersburg, south-bound, in charge of Joseph R. Lifsey, conductor. This train was not scheduled to stop at Carson; its first regular stop being at Emporia, 35 miles further south. About seven or eight minutes after leaving Petersburg, the conductor, passing through the train, found the deceased in the rear vestibule of the first Pullman car, the sixth car from the engine, standing with his back against the end of the car, smoking a cigarette, and asked him where he was going. The deceased made no reply, but handed the conductor a local ticket from Petersburg to Carson, which he took up and asked several additional questions, which were not answered. Nothing was said by the deceased, except that he asked to be carried to his home.

The conductor testified that when he first saw the deceased he did not observe anything to indicate that he had been drinking, but after speaking to him smelled whisky on his breath; that he did not consider him to be in bad condition; that he could walk all right, but appeared "stupid," in the use of which word he says he meant unconcerned or indifferent to his surroundings; that he offered deceased a seat in the car, which the latter did not avail himself of; and that he then went to one of the day coaches, and directed the porter to signal the engineer to stop at Carson, and, when that station was reached, to go back and assist the decedent off the train. The

signal was given, and the train came to a full stop at Carson, the platform of the car upon which the deceased was standing being 149 feet from the depot building, which was lighted. Before the stop was made, the conductor and porter had returned to the car platform where decedent had been left, and found him seated upon a stool used to assist Pullman passengers in alighting. As soon as the train stopped, the porter opened the vestibule door, raised the trap, and, with a lantern in his hand, stepped down the four steps between the car platform and the ground, followed by the deceased. The deceased walked down the steps unassisted until he reached the bottom one, which was 18 or 20 inches from the ground, at which point the porter took hold of his hand and assisted him to the ground. The conductor testified:

"I told the porter, I says, 'Assist him over to the pile of wood.' That is, I meant, to hold his light so he could see where to walk, or to render any assistance that he might need, as far as that goes. That was my main object in telling him to assist him, to hold his light."

The woodpile was 25 or 26 feet from the car. On the passage to the woodpile the deceased walked beside the porter, who had hold of his hand, without further assistance, and, upon reaching it, seated himself on a scantling by it. There he was left, in total darkness, in a condition which rendered him entirely unable to care for himself, with the warning to remain where he was until the train had passed. Nothing was said by the deceased during this time, and there is no testimony showing his movements during the time that intervened before the accident.

[1] The evidence is sufficient to sustain a finding of negligence upon the part of defendant, but it does not connect the decedent's death with the defendant's negligence with any degree of certainty. Eight trains on defendant's road passed Carson during the night of October 20th and early morning of October 21st—the first one, a freight train south-bound, at 9:35 p. m., about 40 minutes after the deceased had been left at the woodpile; and the last one, a north-bound passenger train, at 6:33 on the morning of October 21st. The deceased was found unconscious and fatally injured, alongside the main track, at about 8 o'clock in the morning, at a point about 370 feet north and further away from the woodpile, where he had been left. For a distance of 15 or 20 feet north of the body, one of the rails of the main track had on and adhering to it blood stains and small pieces of flesh, tending to show that he was struck by a train that distance north of where he was lying when found. The deceased died an hour later, without having regained consciousness.

The plaintiff's recovery rests upon the finding that the deceased was so greatly intoxicated at the time of and immediately preceding the accident as to be incapable of caring for himself and practically helpless, and that such condition had existed from the time he was left at the woodpile. The unfortunate feature of plaintiff's case is that there is no evidence showing what he did after the train from which he was taken had proceeded on its way. It is not shown how the

accident happened. There is no evidence tending to show the condition of the deceased immediately prior to the time he was injured. It is possible that he may have become entirely sober before the accident. Again, if we are to indulge in a guess, it might easily be surmised that he had liquor on his person when he left the train, and that he drank more and became intoxicated the second time; but we are not to speculate. The mistake with this judgment is that the jury were permitted to do that, and it must be reversed.

[2] While a common carrier is held to the exercise of a high degree of care to its passengers, and it was defendant's duty to see to it that deceased was left in a reasonably safe place, it is not charged with the obligation or liability of an insurer. The verdict rests upon mere speculation. This conclusion makes it unnecessary to consider the other questions presented.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur.